UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-21976-RNS

FLORIDA FAIR HOUSING
ALLIANCE INC.,

     Plaintiff,

vs.

PARK EAST-WEST LTD. d/b/a PARK
KNOWLES APARTMENTS,

     Defendant.

_____/

### DEFENDANT PARK EAST-WEST LTD.'S MOTION TO DISMISS THE AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Park East-West Ltd. d/b/a Park Knowles Apartments ("Defendant"), through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and Local Rule 7.1(a), moves to dismiss the Amended Complaint [ECF No. 12] for failure to state a claim and lack of subject matter jurisdiction, and, in support thereof, states as follows:

**I.**    **Introduction**

Plaintiff Florida Fair Housing Alliance, Inc. ("Plaintiff") is the corporate alter-ego of Ryan Turizo ("Turizo"), a serial litigant who has filed 29 federal lawsuits in this district in the last 18 months.[1] Between August 2019 and January 2020, Turizo, under his own name, filed 6 boilerplate

---

[1] *Turizo v. Advanced Dental Wellness Center, P.A.*, 0:2019-cv-60409-MGC (Judge Marcia G. Cooke); *Turizo v. Certified Associates, LLC*, 0:2019cv61007 - JIC (Judge James I. Cohn); *Turizo v. Vital Data Services, LLC*, 0:2019cv61318 – RKA (Judge Roy K. Altman); *Turizo v. Same Day Card, LLC*, 0:2019cv61921 – DPG (Judge Darrin P. Gayles); *Turizo v. Slomin's, Inc.*, 0:2019cv61989-WPD (Judge William P. Dimitrouleas); *Turizo v. Camden Summit Partnership, LP*, 0:2019cv62005 – BB (Judge Beth Bloom); *Turizo v. PPF AMLI 5971 Toscana Drive, LP*, 0:2019cv62006 – CMA (Judge Celia M. Altonaga); *Turizo v. Rick Case Enterprises, Inc.*, 0:2019cv62062 – MGC (Judge Marica G. Cooke); *Turizo v. Defenders, Inc.*, 0:2019cv62235 – RKA (Judge Roy K. Altman); *Turizo v. Fiorella Insurance Agency, Inc.*, 0:2019cv62486 – MGC

Fair Housing Act ("FHA") lawsuits[2] and 13 boilerplate Telephone Consumer Protection Act lawsuits.[3] An index of Turizo's FHA lawsuits is attached hereto as Exhibit A.

Turizo's FHA lawsuits follow an identical boilerplate. In each suit, Turizo, a self-described convicted felon, Hispanic male, and "tester," cold-calls a rental property to ask about available housing and identifies himself as a felon. If the property indicates that Mr. Turizo's felony conviction makes him ineligible for available housing, he files a lawsuit claiming that the property's criminal background check policy has an unlawfully discriminatory disparate impact on him under the FHA.

---

(Judge Marcia G. Cooke); *Turizo v. Natural Wellness Center, LLC d/b/a Miracle Leaf of Pembroke Pines*, 0:2019cv62496 – PCH (Judge Paul C. Huck); *Turizo v. 4Bush Holdings*, LLC, 0:2019cv62565 – RS (Judge Rodney Smith); *Turizo v. GS Bayview, LLC*, 0:2019cv63012 – RS (Judge Raag Singhal); *Turizo v. Tamarac Pointe, LTD., Ltd. P'ship*, 0:2020cv60073 – RAR (Judge Rodolfo A. Ruiz); *Turizo v. Rich Metro Group, LLC*, 0:2020cv60074 – RS (Judge Raag Singhal); *Turizo v. Cypress Trail Apts., LTD*, 0:2020cv60103 -RAR (Judge Rodolfo A. Ruiz); *Turizo v. Inlet Bay at Gateway, LLC*, 0:2020cv60172 – FAM (Judge Federico A. Moreno); *Turizo v. UDR, Inc.*, 0:2020cv60180 – MGC (Judge Marcia G. Cooke); *Turizo v. JPMorgan Chase & Co.*, 0:2020cv60428 – RAR (Judge Rodolfo A. Ruiz),

[2] *Turizo v. Camden Summit P'ship, LP*, 0:2019cv62005 – BB (Judge Beth Bloom); *Turizo v. PPF AMLI 5971 Toscana Drive, LP*, 0:2019cv62006 – CMA (Judge Celia M. Altonaga); *Turizo v. GS Bayview, LLC*, 0:2019cv63012 – RS (Judge Raag Singhal); *Turizo v. Tamarac Pointe, LTD., LP*, 0:2020cv60073 – RAR (Judge Rodolfo A. Ruiz); *Turizo v. Rich Metro Grp., LLC*, 0:2020cv60074 – RS (Judge Raag Singhal); *Turizo v. Cypress Trail Apts., LTD*, 0:2020cv60103 -RAR (Judge Rodolfo A. Ruiz).

[3] *Turizo v. Advanced Dental Wellness Ctr., P.A.*, 0:2019cv60409-MGC (Judge Marcia G. Cooke); *Turizo v. Certified Assocs., LLC*, 0:2019cv61007 - JIC (Judge James I. Cohn); *Turizo v. Vital Data Servs., LLC*, 0:2019cv61318 – RKA (Judge Roy K. Altman); *Turizo v. Same Day Card, LLC*, 0:2019cv61921 – DPG (Judge Darrin P. Gayles); *Turizo v. Slomin's, Inc.*, 0:2019cv61989-WPD (Judge William P. Dimitrouleas); ); *Turizo v. Rick Case Enterprises, Inc.*, 0:2019cv62062 – MGC (Judge Marica G. Cooke); *Turizo v. Defenders, Inc.*, 0:2019cv62235 – RKA (Judge Roy K. Altman); *Turizo v. Fiorella Ins. Agency, Inc.*, 0:2019cv62486 – MGC (Judge Marcia G. Cooke); *Turizo v. Natural Wellness Ctr., LLC d/b/a Miracle Leaf of Pembroke Pines*, 0:2019cv62496 – PCH (Judge Paul C. Huck); *Turizo v. 4Bush Holdings, LLC*, 0:2019cv62565 – RS (Judge Rodney Smith); *Turizo v. Inlet Bay at Gateway, LLC*, 0:2020cv60172 – FAM (Judge Federico A. Moreno); *Turizo v. UDR, Inc.*, 0:2020cv60180 – MGC (Judge Marcia G. Cooke); *Turizo v. JPMorgan Chase & Co.*, 0:2020cv60428 – RAR (Judge Rodolfo A. Ruiz).

Turizo changed his tactics early this year. He incorporated Plaintiff in February 2020 and serves as its president. *See* Exhibit B, Articles of Organization for Plaintiff Florida Fair Housing Alliance, Inc. In February, Plaintiff – identifying Turizo as its "tester" – began filing boilerplate FHA lawsuits identical in substance to Turizo's individual suits. To date, Plaintiff has filed 10 FHA lawsuits with Turizo as its "tester" in the four months since its incorporation.[4] *See* Ex. A.

As shown in Exhibit A, Turizo and Plaintiff have avoided any rulings on the merits of their FHA claims by dismissing or settling shortly before or after a defendant moves to dismiss. Here, as it has in other FHA cases, Plaintiff superficially amended the Complaint [ECF No. 12] in response to Defendant's motion to dismiss [ECF No. 7].

The Amended Complaint tracks the same boilerplate formula as the other FHA cases. Plaintiff alleges that Turizo,[5] posing as a prospective tenant, cold-called Defendant's apartment complex to "test" Defendant's rental property for "discriminatory housing practices." Am. Compl. ¶¶ 13-14. Plaintiff alleges that Turizo was told that his felony conviction would "probably" result

---

[4] *Florida Fair Housing Alliance, Inc. v. Coral Haven Apts., LLP*, 1:2020cv20921 – RS (Judge Raag Singhal); *Florida Fair Housing Alliance, Inc. v. Japanese Garden Mobile Estates, Inc.*, 1:2020cv21091 – MGC (Judge Marcia G. Cooke); *Florida Fair Housing Alliance, Inc. v. Park East-West Ltd.*, 1:2020cv21976 – RNS (Judge Robert N. Scola); *Florida Fair Housing Alliance, Inc. v. Top Well, LLC*, 1:2020cv21994 – KMW (Judge Kathleen M. Williams); *Florida Fair Housing Alliance, Inc. v. Deerpath on the Lake, LLC*, 1:2020cv22106 (Judge Darrin P. Gayles); *Florida Fair Housing Alliance, Inc. v. Catalina Rental Apts., Inc.*, 1:2020cv22113 – DPG (Judge Darrin P. Gayles); *Florida Fair Housing Alliance, Inc. v. Liberty Apt. Highland, LLC.*, 1:2020cv22269-MKM (Judge Michael K. Moore); *Florida Fair Housing Alliance, Inc. v. PMG 11th St. Holdings, LLC*, 1:2020cv61120-FAM (Judge Federico A. Moreno), *Florida Fair Housing Alliance, Inc. v. 601 Ocean Investments, LLC*, 1:2020CV22664-KWM (Judge Kathleen M. Williams), *Florida Fair Housing Alliance, Inc. v. The Palm Bay Grand, LLC*, 1:2020cv22665 – DPG (Judge Darrin P. Gayles)

[5] Of the 10 lawsuits Plaintiff has filed, this case was the first that does not identify Turizo by name as Plaintiff's "tester," although Turizo is otherwise described in identical terms ("sui juris Hispanic male with a felony conviction"), Am. Compl. at ¶ 14, as he is in the other boilerplate lawsuits. An index of the pertinent allegations from Turizo's other FHA lawsuits describing the "tester" is attached as Exhibit C.

in denial of his rental application.[6] *Id.* at ¶ 15. And while the Amended Complaint alleges that Turizo is a "Hispanic male," Am. Compl. at ¶ 14, Plaintiff does not allege that Turizo made Defendant aware that Turizo is Hispanic, or that Defendant knew or had reason to know of Turizo's race or ethnicity. So from this single "probably" statement, Plaintiff alleges Defendant has violated the Fair Housing Act, and seeks injunctive relief and damages, including attorney's fees, for disparate impact housing discrimination. *Id.* at ¶¶ 35-42.

For the following reasons, this Court should dismiss the Amended Complaint with prejudice based on Plaintiff's irremediable failure to establish either its standing to sue or a plausible basis for its disparate impact discrimination claim.

## II.     Legal Standards Governing Motions to Dismiss

### A.     Lack of standing under Fed. R. Civ. P. 12(b)(1)

"A defendant may attack standing, and hence subject matter jurisdiction, under Rule 12(b)(1)," which governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Swipe for Life, LLC v. XM Labs, LLC*, 2012 WL 1289726 at * 2 (S.D. Fla. Apr. 16, 2012) (Scola, J.) (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n. 8 (11th Cir. 1993). When, as here, the attack on standing is facial, the plaintiff's allegations are taken as true for the purposes of the motion. *Id.* But jurisdictional allegations are subject to the same plausibility requirements as claims for relief, so the plaintiff "must allege facts

---

[6] This Court previously granted leave to file the audio recording of the phone call [ECF No. 10] as Exhibit D to the Motion to Dismiss [ECF No. 7]. The recording was filed with the Court [ECF No. 11] and submitted to chambers via email on June 18, 2020 and is incorporated by reference here as Exhibit D to this Motion. This Court may consider the phone call for purposes of a 12(b)(6) motion because the phone call is 1) is referred to in the Complaint; 2) central to Plaintiff's claim; and 3) its authenticity is not in question. *See S.F.M. Holdings, Ltd. v. Banc of Am. Sec. LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

that affirmatively and plausibly suggest it has standing to sue." *Amidax Trad. Grp. v. S.W.I.F.T. SCRL*, 631 F.3d 140, 145 (2d Cir. 2011).

Federal courts are empowered to decide only actual "Cases" and "Controversies." U.S. Const. Art. III Sec. 2. As this Court and others have observed, "the doctrine of standing is a 'core component' of this fundamental limitation that 'determine[es] the power of the court to entertain the suit." *MSP Recovery, LLC v. Allstate Ins. Co.*, 276 F. Supp.2d 1311, 1313 (S.D. Fla. 2017) (Scola, J.) (quoting *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264-65 (11th Cir. 2011)). "Because Article III standing implicates subject matter jurisdiction, it must be addressed as a threshold matter prior to the merits of any underlying claims." *Id.* (*citing Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015). Standing, therefore, "is not a mere pleading requirement but rather an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To establish the "irreducible constitutional minimum" of Article III standing, the pleader must allege 1) an injury-in-fact that is concrete and particularized and actual or imminent; 2) the injury is fairly traceable to the defendant's challenged conduct; and 3) the injury or threat of injury is likely to be redressed by a favorable court decision. *Id.* at 560-61. Further, when a plaintiff seeks injunctive relief, allegations of past harm without "any continuing, present adverse effects" are insufficient to establish Article III standing. *See, e.g. Wasser v. All Market, Inc.*, 329 F.R.D. 464, 470 (S.D. Fla. 2018) (Scola, J.) (injunctive relief must seek to redress "a real and immediate threat of future injury") (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Both the Supreme Court and the Eleventh Circuit have set specific pleading requirements for organizations seeking to sue on their own behalf. In *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972), the Supreme Court held that organization seeking "to do no more than vindicate their own

value preferences through the judicial process" generally cannot establish standing. After *Sierra Club,* the Supreme Court held in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), that an organization may establish Article III standing if it shows "a concrete and demonstrable injury to the organization's activities" that is "more than simply a setback to the organization's abstract interests."

Following *Havens*, the Eleventh Circuit has held that organizational standing requires the pleader to show that "the defendant's *illegal acts* impair its ability to engage in its projects by forcing the organization to devote resources to counteract those illegal acts." *Common Cause/Georgia v. Billups*, 554 F.3d 1350 (11th Cir. 2009) (emphasis added). Importantly, to qualify as a cognizable Article III injury, the organization's diverted resources must be independent of the cost of detecting and challenging allegedly unlawful conduct. *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.2d 1153, 1166 (11th Cir. 2008) ("plaintiffs cannot bootstrap the cost of detecting and challenging illegal practices into injury for standing purposes").

**B. Failure to state a claim for disparate impact discrimination under Fed. R. Civ. P. 12(b)(6)**

Without "a short and plain statement of the claim showing that the pleader is entitled to relief," a pleading is subject to dismissal for failure to state a claim if "a cause of action does not contain specific factual matter, accepted as true, to state a claim that is plausible on its face and to suggest the required elements of the claim. Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007); *Iqbal*, 556 U.S. at 678 (Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). So while the court must accept the complaint's

allegations as true and make all plausible inferences in the plaintiff's favor, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Claims of disparate impact discrimination under the FHA are subject to heightened pleading standards. Under the Supreme Court's decision in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* 576 U.S. ---, 135 S. Ct. 2507 (2015), racial imbalance, standing alone, does not establish a prima facie claim of disparate impact housing discrimination, defined as practices "that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Id*. at 2513. To protect defendants from racial imbalances they were not responsible for, the Supreme Court directed lower courts to "examine with care whether a plaintiff has made out a prima facie case of disparate impact," holding that a plaintiff "who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection [between a challenged policy and racial imbalance] or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* at 2523-24.

Put simply, *Inclusive Communities* holds that a disparate impact discrimination claim fails at the pleading stage unless the plaintiff demonstrates *both* relevant statistical disparity and a plausible showing of "robust causality" between the offending policy and the statistical disparity. *Id*. at 2522-23. "If a statistical discrepancy is caused by factors other than the defendant's policy, a plaintiff cannot establish a prima facie case, and there is no liability." *Id*. at 2523.

The Eleventh Circuit had already reached the same conclusion several years earlier in *Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008). In *Schwarz*, the Eleventh Circuit held that a housing provider for persons considered "handicapped" under the FHA failed to make a prima facie claim of disparate impact discrimination by relying on "bald assertions"

about a challenged policy's impact without providing the "comparative data" that would support "an adequate statistical foundation for a disparate impact claim." *Id.* at 1217-18. And other courts have held that the "comparative data" must be specific to the pool of qualified applicants giving rise to the disparate claim, not just general national population statistics. *See*, *e.g.*, *Mandala v. NTT Data, Inc.*, 2019 WL 3237361 at *3-4 (W.D.N.Y. Jul. 18, 2019) (granting 12(b)(6) motion to dismiss disparate impact discrimination claim when pleading relied on general population statistics borrowed from EEOC guidance).

In sum, the pleading must demonstrate statistical evidence of both a racial disparity and data showing that the offending policy causes an unlawful disparate impact. *Inclusive Communities*, 135 S. Ct. at 2522-23; *Oveido Town Center II, LLLP v. City of Oveido, Fla.*, 759 Fed. Appx. 828 (11th Cir. 2018); *Inclusive Communities Project, Inc. v. Heartland Cmty. Ass'n, Inc.*, 399 F. Supp. 3d 657, 667 (N.D. Tex. 2019) (granting 12(b)(6) motion to dismiss disparate impact housing discrimination claim for failure to plead robust causation between policy and statistical racial disparities).

### III. Plaintiff Fails to Establish Organizational Standing

#### A. The Amended Complaint Does Not Establish Plaintiff's Right to Sue on Its Own Behalf.

Beyond several new paragraphs of chest-beating devoted to the undisputed contents of the recorded phone call (Am. Compl. ¶¶ 16-20 and unnumbered paragraphs on pp. 1-2), the only substantive change from the Complaint [ECF No. 1] to the Amended Complaint [ECF No. 12] is the latter's half-hearted nod to *Havens*' "diversion of resources" theory of organizational injury. Am. Compl. ¶ 32. But nothing in this new paragraph, or the remainder of the Amended Complaint, establishes Plaintiff's standing to sue in its own right, which demonstrates Plaintiff's inability to meet the pleading requirements and the propriety of dismissal with prejudice at this juncture.

First, diversion of resources supports an organizational injury for standing purposes *only when coupled with a plausibly illegal act.* *Common Cause/Georgia*, 554 F.3d at 1350 (explaining that "an organization has standing to sue on its own behalf if the defendant's ***illegal acts*** impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts") (emphasis added). For the reasons stated in Section IV below, Plaintiff has not stated a plausible claim of unlawful discrimination. Absent a plausible claim of illegal acts, Plaintiff has not adequately alleged an organizational injury via a "diversion of resources."

Secondly, Paragraph 32's inscrutable incantation of a hodge-podge of buzzwords from *Havens* and its progeny – "divert," "resources," "impaired" – does not plausibly allege a diversion of resources. Unlike other FHA organizational plaintiffs, Plaintiff does not "connect the dots" and allege *what* resources were diverted (time? money? labor?), *how* its other services were impaired, or *why* the alleged misconduct forced it to divert resources. Without even general allegations on these key issues, Plaintiff cannot establish causation or redressability.

Compare Plaintiff's allegations to the pleading in *Havens*. HOME, the organizational plaintiff in *Havens*, alleged that it was a housing nonprofit offering housing counseling and referrals. *Havens*, 455 U.S. at 363. The defendant landlord discriminated against HOME's clients by falsely claiming that housing was unavailable, forcing HOME to expend additional resources to find these clients alternative housing. *Id*. at 379. So even though HOME also engaged in advocacy against discrimination, it was actually engaged in placing its clients in housing. When the landlord's "racial steering practices" interfered with HOME's ability to do so, HOME was forced to divert resources from its counseling efforts by using paired black and white testers to confirm the landlord's discriminatory policies, and, later, into litigation. *Id*. at 368.

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900 F. 305·858·5261

Unlike HOME's well-plead allegations how and why the landlord's racial discrimination required it to divert resources from housing referrals and counseling to testing and litigation, the Amended Complaint offers no affirmative, plausible allegations – even on a general level - about *how* Defendant's alleged practice of "probably" rejecting an unsubmitted rental application impaired Plaintiff's vague "counseling," "education" and "outreach" "projects," (which are not further described elsewhere in the pleading). Am. Compl. ¶¶ 6, 32. Tellingly, even though it amended the Complaint in response to a 12(b) motion, Plaintiff has not included any detail about these interrupted services or "projects," what "resources" were "diverted," or why Plaintiff was "forced" to pursue litigation. Common sense suggests that Plaintiff's failure to allege these ultimate facts is because litigation is Plaintiff's *raison d'être*. In any event, because the pleading describes no costs beyond a 35-second phone call and its litigation costs – a practice rejected in this circuit as impermissible bootstrapping insufficient to establish organizational injury – Plaintiff has not established that it suffered an injury, that Defendant caused it, or that this Court can redress it. *Browning*, 522 F.2d 1153 at 1166 (11th Cir. 2008).

Separately, there are no allegations supporting a "real or immediate threat of future injury" that would support Plaintiff's standing to seek injunctive relief. Indeed, the Amended Complaint's conclusory allegation of "irreparable loss and injury and a real and immediate threat of future discrimination" is unsupported by any factual allegations, and therefore is precisely the type of conclusory, "the-defendant-unlawfully-harmed-me" pleading deficiency disapproved by the Supreme Court. Am. Compl. ¶ 41; *Iqbal*, 556 U.S. at 678.

For these reasons, Plaintiff has failed to plead basic facts demonstrating organizational standing and this Court accordingly should dismiss the Amended Complaint for lack of subject matter jurisdiction. *MSP Recovery, LLC*, 276 F. Supp.2d at 1313-14.

> **B.     The Amended Complaint does not establish Plaintiff's standing to sue on behalf of its members.**

Alternatively, an organization that has not been injured may still have standing to bring suit as a representative of its members - but only when its members would otherwise have standing to sue in their own right. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 512 (1975); *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999). Here, the Amended Complaint does not allege that Plaintiff is a membership organization; that the "tester" is a member; or that Plaintiff is bringing suit on behalf of a member. But in the event Plaintiff nevertheless attempts to claim associational standing, Plaintiff *still* lacks standing because Turizo did not make a bona fide offer to rent and was not the victim of a discriminatory misrepresentation. As such, he did not suffer a cognizable injury under the FHA. Because Turizo lacks standing to sue in his own right, Plaintiff may not sue for him.

The FHA separately prohibits discriminatory refusals to rent, 42 U.S.C. § 3604(a), as well as the discriminatory provision of false information about housing availability, 42 U.S.C. § 3604(d). *Havens*, 455 U.S. at 363. As the Supreme Court explained in *Havens*, Congress required a "bona fide offer" to rent or purchase for discriminatory refusals to rent under Section 3604(a), but did not impose a similar requirement for discriminatory misrepresentations under Section 3604(d). *Havens*, 455 U.S. at 363. Although testers, by definition, do not have a "bona fide" intent to rent – therefore precluding standing under Section 3604(a) - the *Havens* Court concluded that a "tester who has been the object of a **misrepresentation** made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the [FHA's] provisions." *Id*. at 364 (emphasis added).

Applying these principles, *Havens* found that the black tester – who was *falsely* told that housing was unavailable – had standing to sue individually based on the injury to her statutory right to truthful housing information under Section 3604(d). *Id.* at 374. On the other hand, the

white tester, who was correctly told that housing *was* available, did not have standing because he did not allege "that he was the victim of a discriminatory misrepresentation," and therefore had not pleaded a cause of action under Section 3604(d). *Id.* at 374-75.

Turizo lacks standing for the same reasons as the white tester in *Havens*. The Amended Complaint describes "testing" Defendant's rental complex using Turizo as a "field tester." Am. Compl. at ¶¶ 11-14. It does not allege that he made a bona fide offer to rent. Because Turizo was acting as a "tester," without an actual intent to rent, he does not have standing under Section 3604(a), which governs discriminatory refusals to rent and requires a "bona fide offer." *Havens*, 455 U.S. at 373; 42 U.S.C. § 3604(a).

Similarly, the Amended Complaint's failure to allege a discriminatory misrepresentation deprives Turizo, and by extension Plaintiff, of the informational injury recognized in *Havens* under Section 3604(d). Turizo, like the white tester in *Havens*, does not (and cannot) allege that Turizo was "the victim of a discriminatory misrepresentation." *Havens*, 455 U.S. at 374-75. To the contrary, and viewed in the light most favorable to Plaintiff, Plaintiff alleges that Turizo was *truthfully* told that his felony conviction disqualified him from available housing – not that he was *falsely* told that available housing was *un*available. Without an allegation of discriminatory misrepresentation, Turizo has failed to establish "tester" standing under *Havens* and Plaintiff has no right to bring an action on his behalf. This Court should dismiss the Amended Complaint for lack of standing.

### IV.   The Amended Complaint Fails to State a Claim for Unlawful Disparate Impact Housing Discrimination

On top of Plaintiff's irremediable standing defects, the Amended Complaint also fails to state a claim on which relief can be granted. Based solely on an equivocal answer – "probably" – during a single phone conversation with Defendant's agent, Plaintiff sweepingly concludes that

Defendant has a "practice or otherwise policy regarding the criminal history of individuals seeking to rent" that has a "disparate impact on Black and Hispanic individuals and otherwise fails to serve a substantial, legitimate, nondiscriminatory interest[.]" Am. Compl. ¶ 31. Plaintiff does not allege that Turizo's rental application was denied based on his felony conviction, or even that he was denied the ability to apply. Plaintiff nevertheless alleges that "it has suffered, is suffering, and will continue to suffer irreparable loss and injury and a real and immediate threat of future discrimination by Defendant." *Id.* ¶ 41. These allegations fail to state a cognizable disparate impact housing discrimination claim under the FHA.

### A. Absent evidence of disparate impact upon a protected class, a facially neutral "criminal record" policy is lawful.

Although somewhat of a moving target throughout the pleading,[7] Plaintiff's core allegation appears to be that Defendant has a "practice" of "without any review or investigation, turning away individuals with a felony criminal record. Am. Compl. ¶ 38. This allegation is untrue. But assuming its truth for purposes of this motion, as the Court must at this stage, the allegation of a blanket prohibition based on a felony conviction is not a cognizable disparate impact claim under the FHA. Although Plaintiff does not claim that Turizo actually applied for housing and was denied based on his felony conviction, several courts have recognized that criminal background checks may serve as a legitimate basis for denial of a rental application. *See Bida v. Shuster Mgmt., LLC.*, 2019 WL 1198960 at *4 (D. N.J. Mar. 14, 2019); *Evans v. UDR, Inc.*, 644

---

[7] Plaintiff's previous pleading accused Defendant of having a "blanket ban" or "blanket prohibition" on convicted felons. Compl. [ECF No. 1] at ¶¶ 1, 2, 3, 17, 23. That term is conspicuously absent from the Amended Complaint, where Plaintiff characterizes the phone call as evidencing a "practice or otherwise policy," Am. Compl. ¶ 31, "discriminatory steering practices" ¶ 30, or a "practice," ¶ 38.

F. Supp. 2d 675, 691 (E.D.N.C. 2009) ("the FHA clearly does not prohibit landlords from denying a person occupancy on the basis of his criminal record").

    **B.**    **The Amended Complaint fails to meet the pleading standards for disparate impact housing discrimination under recent Supreme Court and Eleventh Circuit precedent.**

The Amended Complaint falls far short of the pleading standards set by the Supreme Court and Eleventh Circuit for disparate impact housing violations under the authorities set forth in Section II.B, *supra*.

First, the Amended Complaint has no factual allegations showing either statistical racial disparities or a causal connection between the alleged "blanket prohibition" policy for convicted felons and any racial disparities. Tellingly, Plaintiff fails to allege any local or even statewide data showing the racial makeup of convicted felons in Defendant's actual or potential tenant pool, or that there are racial disparities in housing in the relevant community. Instead, Plaintiff cites national *arrest and incarceration* data from 2016 HUD Guidance and elsewhere, which is quite separate from, and fails to address, the alleged disparate impact of a policy allegedly excluding *convicted felons*. As the Eleventh Circuit and other courts have repeatedly reaffirmed in assessing disparate impact discrimination claims, the relevant data needs to be geared toward a specific community. *See, e.g.*, *Oveido Town Center II*, 759 Fed. App'x. At 836-37 (requiring city-wide racial data to make prima facia showing); *Schwarz*, 544 F.3d at 1217 (same). Plaintiff cannot meet its burden because it does not offer data tailored to the South Florida community (a community in which Defendant – located in Winter Park, Florida - is not a member). Am. Compl. ¶ 11.

Second, the HUD Guidance does not address the alleged disparate impacts of policies excluding convicted felons. Plaintiff does not otherwise allege *facts* showing that the facially-neutral "blanket prohibition" is related to a racial disparity in the numbers of black and Hispanic

rental applicants in proportion to the pool of potentially qualified tenants for Defendant's rental units. Because Plaintiff improperly relies upon "bald assumptions" without "comparative data" establishing a racial disparity, let alone connecting the disparity to a specific policy, the Amended Complaint fails to state a claim for disparate impact discrimination. *Oveido*, 759 F. App'x at 835.

### C. HUD guidance is not the law.

Plaintiff's extensive citations to the 2016 HUD Guidance is legally immaterial designed to paper over the Amended Complaint's fatal pleading deficiencies. Agency guidance is not the law and is only entitled to as much weight as a court decides to afford it. *Hardie v. National Collegiate Athletic Ass'n*, 876 F.3d 312, 323 (9th Cir. 2017); *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 858 (11th Cir. 2009). Relevant to this case, the HUD Guidance does not even say that blanket denials of rental applications to convicted felons (not that Defendant has such a policy) violate the FHA. All the document says is that blanket denials (like any other challenged policy) *shown to have a discriminatory effect* would violate the FHA. Neither the Amended Complaint nor the HUD Guidance provides the causal link required by *Inclusive Communities, Schwarz* or *Oveido*.

Additionally, the Amended Complaint ignores authority subsequent to the HUD Guidance that clarifies and explains when blanket denial policies are permissible. The HUD Guidance relies upon the Eighth Circuit's decision in *Green v. Missouri Pac. R.R. Co.*, 523 F. 2d 1290 (8th Cir. 1975), for the proposition that blanket denials for "any conviction," which would include misdemeanors, are overbroad and could support a disparate impact claim. HUD Guidance, Ex. A to Am. Compl., at p. 6. After the HUD Guidance was published, the Eighth Circuit clarified the *Green* holding in *Eggers v. Wells Fargo Bank N.A.*, 899 F.3d 629, 634-35 (8th Cir. 2018), holding that a blanket denial for employment applicants convicted of theft crimes did not support a prima facie claim for disparate impact discrimination. Accordingly, the legal theory upon which the

Case No. 1:20-cv-21976

Amended Complaint is based is contrary to the actual law governing blanket criminal background policies in the disparate impact discrimination context, and so fails to state a claim.

For all the foregoing reasons, the Amended Complaint's allegations fail to state a cause of action as a matter of law. The only allegation offered as evidence of a disparate impact is the alleged "blanket prohibition regarding an applicant's felony criminal history." Unlike a blanket denial for all persons with a criminal history, an alleged policy excluding convicted felons alone cannot form the basis for disparate impact claim as a matter of law. No matter how Plaintiff repackages this claim, the premise does not support a claim as a matter of law and should be dismissed with prejudice.

### D. One isolated instance does not make a prima facie case of an actionable "pattern or practice."

Plaintiff's entire case is based on a single, equivocal statement from Defendant's agent during a cold-call about rental housing. But to demonstrate disparate impact discrimination, "misconduct must be more than isolated to rise to the level of actionable pattern or practice.'" *United States v. Fountainbleau Apartments L.P.*, 566 F. Supp.2d 726, 733 (E.D. Tenn. 2008). Even in the light most favorable to the Plaintiff, the single, equivocal "probably" does not plausibly support an inference that Defendant has a policy or practice, the substance of that policy or practice, let alone a policy or practice that has a discriminatory impact on against a protected class of people.

Importantly, Plaintiff has not alleged *any* information on what Defendant's actual policy is. Instead, the Amended Complaint relies upon Turizo's tried-and-true "gotcha" cold-call tactic, where, obtaining what Turizo believed to be a discriminatory answer, he promptly hung up the phone and sent out a demand letter. This single interaction, without more, does not support the sweeping conclusions Plaintiff alleges about the existence of a policy or practice.

To confirm this point, the Amended Complaint is devoid of any allegations suggesting that Defendant actually denies rental applications from convicted felons. Plaintiff does not even allege that Turizo (or any other convicted felon) submitted an application and was denied, or that Turizo was denied the ability to apply, that he was told not to apply, or that similarly situated white applicants with felony convictions were approved to rent. It strains reason to suggest that from this single "gotcha" phone call that Defendant is discriminating against "Hispanic/Latino" people. Because Plaintiff cannot identify *the application* of a policy or practice, much less one creating a disparate impact, it has not pleaded a prima facie claim for disparate impact discrimination. *Hardie*, 876 F.3d at 21.

## CONCLUSION

As shown above, Plaintiff's appropriation of the "tester" label does not establish standing or state a claim for violation of the Fair Housing Act. But beyond these evident legal shortfalls, Plaintiff's serial, baseless FHA litigation, premised on an unhinged reading of non-binding agency guidance, caricatures the decades of labor done by organizations dedicated to combatting the real and persistent menace of housing discrimination. It makes the already hard work done by those organizations that much more difficult. Because the Amended Complaint is fatally deficient, and Plaintiff's litigation strategy is apparently untethered from a bona fide organizational commitment to combatting housing discrimination, Defendant respectfully requests dismissal of the Amended Complaint with prejudice, and an award to Defendant of its reasonable attorney's fees and costs under 42 U.S.C. § 3613(c)(2).

Case No. 1:20-cv-21976

Respectfully submitted,

By: *Jared W. Whaley*
Daniel F. Blonsky, FBN 972169
Jared W. Whaley, FBN 107774
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse One
Miami, Florida  33133
Telephone: 305-858-2900
Facsimile: 305-858-5261
dblonsky@coffeyburlington.com
jwhaley@coffeyburington.com
groque@coffeyburlington.com
service@coffeyburlington.com

*Counsel for Park East-West Ltd*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on July 1, 2020, on all counsel or parties of record on the Service List below.

s/ *Jared W. Whaley*

| Service List | |
|---|---|
| JIBRAEL S. HINDI, ESQ.<br>THOMAS J. PATTI, ESQ.<br>The Law Offices of Jibrael S. Hindi<br>110 S.E. 6th Street, Suite 1744<br>Ft. Lauderdale, FL 33301<br>Tel:  954-907-1136<br>jibrael@Jibraellaw.com<br>tom@jibraelaw.com<br><br>*Counsel for Florida Fair Housing Alliance, Inc.* | |