United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Florida Fair Housing Alliance, Inc., Plaintiff,<br><br>v.<br><br>Park East-West Ltd., Defendant. | Civil Action No. 20-21976-Civ-Scola |

### Order Granting Motion to Dismiss

Plaintiff Florida Fair Housing Alliance ("FFHA"), claims that Defendant Park East-West Ltd. violated 42 U.S.C. § 3604(d) of the Fair Housing Act by allegedly denying housing to FFHA's field tester based on the field tester's felony criminal history. The Defendant moved to dismiss based on Federal Rules of Procedures 12(b)(1) and 12(b)(6). After careful consideration, the Court **grants** the Defendant's motions to dismiss.

1. **Background**[1]

The FFHA, established on February 14, 2020, is a Florida non-profit corporation with the stated purpose of "eliminating prejudice and discrimination of human and civil rights secured by law." (ECF No. 15, App'x B.) As part of its mission in combatting prejudice and discrimination, the FFHA claims to "engage[] in education and outreach; provide[] counseling to individuals facing discrimination; work[] with local and federal officials to enhance fair housing laws and their enforcement; undertake[] investigations to uncover unlawful discrimination; and, when necessary, initiate[] enforcement actions." (ECF No. 12 at ¶6.)

On April 7, 2020, a field tester for the FFHA spoke with an agent for the Defendant to inquire about the availability of a one-bedroom apartment at Defendant's apartment complex in Winter Park, Florida.  The Defendant's agent told the field tester housing was available and asked when the field tester could come to view apartments. The field tester informed the Defendant's agent that he was a "convicted felon" and asked if that would cause him to be denied for housing. (ECF No. 22 at 2.) The Defendant's agent first responded he "could not say yes or no" but after further pressing by the tester, FFHA's field tester was told he would "probably" be denied given his status as a convicted felon.

---

[1] The Court accepts the FFHA's factual allegations as true for the purposes of evaluating the Defendants' motions to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

1

(ECF No. 22 at 2.) Based on this testing, the Plaintiff contends that the defendant has a "practice of, without any review or investigation, turning away individuals with a felony criminal record." (ECF No. 12 at ¶38.) The Plaintiff argues that this has a disparate impact on Black and Hispanic people in violation of Section 3604(d) the Fair Housing Act.

In response to Plaintiff's claim, on July 1, 2020, the Defendant filed its motion to dismiss. The Defendant argues that FFHA's complaint must be dismissed as FFHA lacks standing pursuant to Federal Rule of Civil Procedure 12(b)(1). Alternatively, the Defendant argues that even if FFHA has standing, FFHA has nonetheless failed to state a claim for disparate impact discrimination under the Fair Housing Act and therefore the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## 2. Standard of Review

When considering a motion to dismiss, the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.* In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted).

### 3. Analysis

#### A. Legal Standards

Pursuant to a theory of disparate impact discrimination, FFHA claims that the Defendant has violated Section 3604(d) of the Fair Housing Act which makes it unlawful to "represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." 42 U.S.C. § 3604(d). In *Texas Department of Housing and Community Affairs v. The Inclusive Communities Project, Inc.*, the Supreme Court considered the question of "whether, under a proper interpretation of the [Fair Housing Act], housing decisions with a disparate impact are prohibited." 576 U.S. 519, 530 (2015). *Inclusive Communities* ultimately held that "disparate-impact claims are cognizable under the Fair Housing Act." *Id.* at 545.

In order to plead a disparate impact claim, a plaintiff must allege that a defendant has a practice that is "not intended to discriminate" but nonetheless has a "disproportionately adverse effect on minorities." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The practice must also be unjustified by a legitimate rationale. *Inclusive Communities*, 576 U.S. at 541. Where a plaintiff relies on a statistical disparity to allege their disparate impact claim, the claim "must fail" if the plaintiff cannot point to a defendant's policy causing the disparity. *Id.* at 542. Put another way, there must be a "causal connection" between the offered statistics and the defendant's practice. *Id.* at 543. Accordingly, under the Fair Housing Act, "racial imbalance . . . does not, without more, establish a prima facie case of disparate impact and thus" defendants are protected "from being held liable for racial disparities they did not create." *Id.* at 542 (internal citations omitted).

Private citizens and indeed organizations like FFHA may prosecute claims under the Fair Housing Act, provided they have appropriate standing to do so. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). To adequately allege standing, a plaintiff must show: (1) they have suffered an "injury in fact" that is concrete and particularized and actual or imminent, i.e. not conjectural or hypothetical; (2) that there is a causal connection between the injury complained of that is fairly traceable to the defendant and not some third party not before a court; and (3) that it is likely and not merely speculative that the injury will be redressed by a favorable opinion. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). For organizational plaintiffs

like FFHA, an organization can adequately allege standing if it is able show "a concrete and demonstrable injury to the organization's activities" that is "more than simply a setback to the organization's abstract interests." *Havens* 455 U.S. at 379.

The Eleventh Circuit, expanding on *Havens*, has further explained that an "organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008). The organization must "demonstrate the asserted illegal acts are in conflict with the organization's mission." *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 189 F. Supp. 3d 1327, 1337 (S.D. Fla. 2016) (Ungaro, J.) (discussing *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014)). As standing is a jurisdictional inquiry, the Court must first decide if FFHA has adequately alleged standing before it may consider other issues. *Am. Civil Liberties Union of Fla. v. Dixie Cty., Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012).

### B. Standing

FFHA claims to have adequately plead standing on the basis that the Defendant's alleged "practice of, without any review or investigation, turning away individuals with a felony criminal record" required the FFHA to "devote resources to counteract the . . . complained actions of Defendant" and "divert resources from . . . its counseling, outreach, and educational efforts" causing injury to the organization. (ECF No. 12 at ¶32, 38; ECF No. 22 at 7-8.) Taking FFHA's allegations as true and construing them in the light most favorable to the Plaintiff, the Court finds that the FFHA has failed to adequately plead standing based on the diversion of its resources.

While the Defendant contends that FFHA has not suffered injury in fact as FFHA's tester "was correctly told that housing was available," (ECF No. 15 at 12) the Defendant conflates the tester's individual standing with organizational standing. Had FFHA based its standing on its tester's capacity to sue, FFHA would not have suffered an injury in fact and would not have standing as the tester was provided accurate information as to the availability of housing. *See Havens*, 455 U.S. at 374-75 (finding lack of standing where tester was provided "accurate information concerning the availability of housing."). However, FFHA's allegations as to injury in fact are rooted in injury to the FFHA as an organization, namely that the FFHA was required to divert resources from its other advocacy activities to counteract the Defendant's actions. *See Id.* at 379 ("If, as broadly alleged, petitioners' steering practices have perceptibly impaired

4

HOME's ability to provide counseling and referral services . . . there can be no question that the organization has suffered injury in fact."). Based on these allegations, FFHA has suffered injury in its own right as an organization.

However, the inquiry as to injury in fact does not end there as FFHA's resources must have been diverted to counteract the allegedly illegal actions of the Defendant. *See Browning*, 522 F.3d at 1165. Here, FFHA contends that Defendant has an illegal "practice of, without any review or investigation, turning away individuals with a felony criminal record." (ECF No. 12 at ¶38.) Contrary to the FFHA's contentions, the complaint and FFHA's testing reveal the Defendant does not have such a practice in place. Rather, FFHA's testing reveals that Defendant *may* turn away individuals with felony convictions. While FFHA's tester was told he "probably" would be denied housing as a convicted felon, "probably" nonetheless implies that the tester's application would be considered and potentially approved even if there was a greater likelihood that the application may ultimately be denied (though denial is by no means the preordained result FFHA represents in its complaint). The corollary to this is that the FFHA's testing revealed that some applicants with felony criminal histories will have their applications approved by the Defendant. Ultimately, whether an individual is denied for housing could be based on a variety of legitimate factors that are entirely independent of an applicant's felony criminal history. Indeed, it is not *per se* improper to consider criminal history when reviewing housing applications. *Hall v. Philadelphia Hous. Auth.*, CIVIL ACTION NO. 17-5753, 2018 WL 263318, at *2 (E.D. Pa. Jan. 2, 2018) (The Fair Housing Act "does not preclude consideration of an individual's criminal record in housing decisions."). Accordingly, in addition to finding that FFHA has failed to allege injury in fact, the Court also has concerns as to whether Plaintiff has adequately plead causation and redressability under *Lujan*.

Notably, as well, the FFHA brings its claims pursuant to Section 3604(d) of the Fair Housing Act which prohibits the Defendant from representing to applicants that housing "is not available . . . when such dwelling is in fact so available" due to "race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. 3604(d). FFHA's own testing reveals that the Defendant's agent represented to the FFHA's tester that housing was available and invited the tester to "come take a look." (ECF No. 12 at ¶15.) Accordingly, even had the FFHA adequately alleged standing it is nevertheless unclear if FFHA has a cognizable claim under the Fair Housing Act.

### C. Disparate Impact

As the Court find that FFHA lacks standing, the Court need not reach FFHA's disparate impact claims under the Fair Housing Act.

### 4. Conclusion

The Court therefore **grants** the Defendant's motion to dismiss. (**ECF No. 15.**) The complaint is dismissed without prejudice and without leave to amend. The Court directs the Clerk to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered** in Miami, Florida on September 1, 2020.

_____
Robert N. Scola, Jr.
United States District Judge